TATE, Judge
(dissenting).
The decedent Frame, aged 41, in apparent good health, was stung by a bee on September 12, 1966. Within thirty minutes he became nauseated, and subsequently paralysis set in on the left side of his body. The majority concedes this was a result of the bee sting — due to a latent disease (an 80,% closure of an artery), the systemic reaction to the sting caused a further impairment of circulation, which produced the nausea and paralysis.
As a direct result of his hospitalization for the bee sting, and of surgical procedures to relieve the cause of the paralysis remaining therefrom, the workman died on September 30, a little over two weeks after the bee sting. Had the bee sting not produced the paralysis and shown the necessity for surgery, this young and apparently healthy man would in all probability be alive today.
The majority disallows recovery for the decedent’s death upon its finding that the primary reason for the death-causing operation was to relieve the pre-existing sten-osis (occlusion or clogging) of the artery. This, in my view, ignores the testimony of the specialist, Dr. Harvey, that the preexisting clogging was aggravated by the bee sting, since some paralysis remained at the time of the surgery. In short, the operation was occasioned by the work-caused aggravation as well as by the pre-existing condition.
As Dr. Harvey testified: “ * * * [T]he bee sting * * * caused the patient to become ill, which in turn aggravated an already existing condition.” Tr. 174. “ * * * [Tjhis patient * * * had a systemic reaction secondary to the sting such that the vascular supply through an already compromised vessel was insufficient and produced the symptoms.” Tr. 185-86; see also Tr. 187-88.
When Dr. Harvey was asked if the effects of the bee sting in impairment of circulation and paralysis were only temporary, *71 he replied: “If by temporary you mean he had improved some [i. e., following the first widespread paralysis of the left side], I don’t ever see where he improved one hundred per cent * * * He did not have a total hemiplegia paralysis prior to the first operation. This had improved, but it was not one hundred per cent improved, so that you cannot say he got over it completely.” Tr. 190-91.
The majority holds that in the death of this wage-earner did not result from the paralysis caused by the bee sting, because the surgery causing the death was not to relieve the paralysis but rather only to open up the blood vessel and to restore circulation. However, the paralysis residual at the time of the operation did result from the bee sting, and it was caused by the sting’s aggravation of the latent impairment of the circulation. The operation may indeed have been to restore the circulation, but it was occasioned at least in part by the additional impairment of circulation resulting from the sting which caused the paralysis. I cannot follow the majority’s reasoning that the death is not compensable because the operation was to relieve a pre-existing condition, when in fact the operation directly resulted from the aggravation of the latent condition caused by the work-accident.
The majority itself would admit that its holding is directly contrary to that of our Supreme Court in its recent decision in Bertrand v. Coal Operators Casualty Co., La., 221 So.2d 816. There, this court was reversed under circumstances and medical testimony generically similar to the present. The high court there noted, 221 So.2d 827: “ * * * [W]here there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability.”
Here, a healthy wage-earner without pri- or illness was stung and became paralyzed within minutes at work. As a direct result, he was hospitalized and underwent surgery. He died as a result of the surgery. Under Bertrand and the specialist’s testimony, the disabling manifestation resulting from the bee sting must, at least as aggravated, be held to have been caused by the accident at work.
Further, even without Bertrand’s clarification of the jurisprudence, the decedent’s death as a result of surgery to relieve his impairment of circulation should be held compensable, since such impairment was aggravated by the accident at work. Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625. It is of course unquestioned that a disability or death caused by medical treatment is regarded as resulting from the work-accident, if the medical treatment was occasioned by a condition caused by the accident at work. Frugé v. Hub City Iron Works, La.App. 3d Cir., 131 So.2d 593, certiorari denied. See also Woodward v. Kansas City Bridge Co., La.App. 1st Cir., 3 So.2d 221, syllabus 2.
For these reasons, the writer respectfully dissents from the majority’s denial of compensation death benefits to the plaintiff widow.
MILLER, J., joins in TATE, J., dissent.